Good afternoon. May it please the court, counsel, my name is Scott Piles. I represent the plaintiff Crystal Lane in this case. The plaintiff in this case is a defendant appealing the motion for summary judgment on behalf of the defendant. In this case the defendant moved for summary judgment in what is commonly referred to as a slip and fall case. My client Crystal Lane was patronizing the defendant's place of business back on February 27, 2010. She was walking with a companion into the restaurant. As she was walking into the restaurant she observed her companion who was walking in front of her slip. As she continued walking towards the restaurant entrance in the parking lot she fell on what she described as ice in the parking lot and fell and broke her ankle. When she stood back up she noticed that the sidewalk was salted but that the parking lot was not. After filing suit the parties were opposed in this case. The defendant's restaurant owner, a gentleman by the name of Demetrius Grimanis, testified that he had a program of maintaining both the sidewalks and the parking lot from snow and ice. They shoveled and salted the sidewalk themselves and then they had a Joliet police officer hire him to come in and snow plow the parking lot. The plowing of the parking lot was done when the Joliet police officer felt that it was warranted. And that was the program that they had that they voluntarily undertook to maintain both the sidewalk and the parking lot from natural accumulation of snow and ice. Mr. Grimanis said that he was not present at the time that Ms. Lane slipped and fell in his parking lot, but that he testified that it had been freezing and there had been some flurries that day and that it was freezing outside, that he voluntarily maintained this program of having the sidewalk in front of the entrance of the restaurant shoveled and salted and that it was in fact salted when he arrived there the day after this incident. He also described that the parking lot had not been plowed and it hadn't been salted either. He also testified that the grade to the sidewalk from the front door was sloped so that water would run away from the door and the sidewalk and into the parking lot. It is our contention that the trial court erred in granting summary judgment. In its motion for summary judgment, the defendant raised two allegations entitled to summary judgment. One, that the accumulation of ice that was spoken about by the plaintiff was in fact a natural accumulation of ice and that they have no duty to remove a natural accumulation of ice. My response to that, and I think one place where the trial court erred, is that because the defendants in this case voluntarily undertook the duty to remove the snow and ice, not just from the sidewalk but also from the parking lot, that the fact that it's a natural accumulation is irrelevant. And that as they voluntarily undertook this duty, they were under a duty to do it with ordinary and reasonable care. The second contention was that the plaintiff could not prove that it was an unnatural accumulation of ice that the plaintiff had in fact slipped on. In the discovery deposition, however, it is my position that there was a genuine issue of fact as to whether or not this was an unnatural accumulation of ice. And I raised three reasons for that. Number one, that the sidewalk itself was salted and that the weather conditions were that it was either freezing or at freezing and had even been snowing that day. Number two, contrary to the trial court's order in this case, the trial court has said there was no evidence of any grade. That he had stated in his decision, and it was my position, that the sidewalk had been treated, it had been salted, and it had melted away the precipitation that had fallen, and then it had melted and went into the parking lot, which was untreated, and then it refroze. And that that in and of itself raised a genuine issue of fact as to whether or not that was an unnatural accumulation due to the fact that the grade of the sidewalk moved the water into the parking lot as opposed to leaving it on the sidewalk, where if it was just melted and then refroze, that the case law says, well, that's not an unnatural accumulation. But in fact, in this particular case, because of the grade that the water had to be congregated in the area past the sidewalk and into the parking lot, that was in fact a genuine issue of fact as to whether or not there was an unnatural accumulation in the parking lot. It's important to note that in the true discovery deposition, the plaintiff doesn't have to prove by preponderance of the evidence its case at the summary judgment motion stage. But all that I have to do in opposing a motion for summary judgment is to serve a factual basis that would entitle us to judgment. The reason that I'm here, that I believe that the trial court erred in granting a summary judgment, is that it made several factual findings in its order that should have been made, in fact, by a jury in this case or an arbitration panel, as this was a case that was moved to the arbitration division. And what are those factual findings again? Well, the factual finding that Judge Anderson found was that number one, he made a finding that he thought that based on the deposition testimony... I say a jury needs to make that this summary judgment should not have been granted, that it should go to jury on these material facts. The material facts that arose, whether or not the court stated that he felt that the ice and the snow was going to melt anyway, based on some reading of the deposition testimony. And I think that there was conflicts in that testimony. Number one, the owner had said it was freezing outside, that it had been snowing, but then he gave a temperature range between 32 and 38 degrees. And his factual finding is that the snow was probably going to be melting anyway and wouldn't make any difference of whether or not the sidewalk was in fact treated. Okay, but your theory, I mean, I think you are saying, or I'm sure your opponent is going to say, the state of the law is that if you don't mess with the natural accumulation, there is no liability, correct? Oh, I agree. Okay. But they did. They solved it. They solved it and they melted it. Where did she fall? Well, she fell in the parking lot. Now, is it your theory that that parking lot on that particular day and time had an unnatural accumulation, and if so, from what? The actual accumulation was this. The unnatural? Right. It had been snowing that day. Okay. The employees of the restaurant came out, they shoveled and salted the sidewalk. Where she didn't fall. But when they melted, when they put the salt down on the sidewalk but did not treat the parking lot, the precipitation, the snow that was on the sidewalk melted. And because of the grade, it drained into the parking lot where it re-froze and caused an unnatural accumulation in the parking lot. Due to the grade and the fact that they did not treat the parking lot. They only treated the sidewalk. And my point is this. Well, now, would you say if the fall did occur in the parking lot per se, in the middle of the parking lot, and that parking lot had not been messed with that day? I don't care about his policy of having a part-time police officer, or a police officer part-time, you know, doing part-time work when he solved it. But you would say, if they were in that middle of that parking lot and she fell, do you think the restaurant owner has any liability then? I would say this. Given the fact that, in general, if we leave out everything about the sidewalk. Which we are in my example. That's right. That if it had just snowed on the parking lot, the court would be correct. Okay. Because that's a natural accumulation. Right. That's correct. Okay. But the testimony was that she was almost to the door when she fell. At the area where she did fall was near the sidewalk. Which had, in fact, been treated on a day that it had been snowing and had been salted. And that it had melted and accumulated in the area near the sidewalk where she fell. And I submit that there's a genuine issue of fact to determine whether or not that was, in fact, you know, the restaurant's doing. And that caused that water and that melting from that snow to come in and reside in that area near, in the parking lot, near where the sidewalk was. I understand your theory. Now, what testimony do you have from the injured party or from her companion that she fell on any ice at all? She testified that she fell on ice. No, she didn't. Did she? She did. And it's in the first page of the judge's order. He says, well, what did you fall on? She testified, ice. But there were some follow-up questions. She says, well, did you see the ice? Well, no. And did you see it after she fell? And, you know, no. She didn't feel it with her hands, she didn't. Is she concluding that it was ice because she saw her companion slip ahead of her? Justice Holdridge, in looking at deposition testimony, I don't want to read in between the lines. I don't believe that question was asked. And because of that, I'm entitled to that inference. Every reasonable inference is to be drawn in favor of the plaintiff at the summary judgment motion stage. And to that extent that she did testify that she did fall on ice. Well, I think that's all you have. I think that's true. Now, maybe the state of the law says that's enough to defeat a summary judgment. We'll look at that. But right now, if you look at the Barrett testimony, she's not saying there's nothing there as to what she fell on. Well, Justice Holdridge, one thing I would say is that we keep in mind a couple of things. Number one, I mean, we are talking about a discovery deposition, and it wasn't a long discovery deposition at that. I wasn't asking the questions. This is obviously the defendants were deposing her for a discovery deposition, and they were asking her some questions. Now, in essence of the questions that were asked, is every possible avenue drawn off to that? My submission to that would be no. My response is, though, that she did identify that she did fall on ice, and that she fell in roughly the same proximate where her companion had fallen. Well, she didn't fall on her companion, did she? No, her companion did not fall. She did. Right. But is there or is there not some deposition testimony that she saw her companion slip? Yes, yes. That she didn't actually go into a fall? That the companion didn't go into a fall. That's correct. That's right. The companion was walking in front of her. They were going into the restaurant. He was in front. He saw her. She saw her companion slip a little bit, but not fall. Correct. She came up in the same area, and then she slipped and she fell. Mr. Piles, your client did say in the deposition that she slipped on ice. Yes. But then her responses to all of the follow-up questions suggested that she really didn't know whether it was ice or not. She didn't see anything. She didn't feel anything. She couldn't say that it was ice. Is that accurate? There are follow-up questions where she is asked, did you see it beforehand? And she answered no. Did you see it after the hand? And I don't know if she said no or I don't remember. And there were some of those follow-up questions. But in fairness, though, she did break her ankle, as she testified to, and she was in a great deal of pain as she was sitting there in the parking lot. And I think that those facts have got to be taken into consideration in determining where she's going to be feeling around. Well, would it be sufficient for her companion to say definitively, and I don't know whether her companion has been deposed or not, but if her companion is able to confidently and credibly testify that ice was slipping on ice and that there was ice there, is that sufficient? I believe that that would help support the plaintiff's testimony that she slipped on ice. Correct. Now, he was not deposed in this case. If you review the record, I was attempting to get his deposition testimony, but I could not track him down. But again, I would point out that in the summary judgment stage, I don't have to prove the case. I don't have to prove it. All I have to do is show a factual basis. And I believe that the deposition testimony of a plaintiff is enough to get me beyond the inverter. It's a pleasure, at least, to be able to talk about evidence. The last two cases I've had before this court, the first case, the plaintiff was deceased. And in the second case, the defendant was deceased. So I didn't have much evidence to talk about. And it's refreshing to be here today to be able to talk about deposition testimony in front of the court that I can actually rely on. In summary, I would look at the trial court's finding and order in this case. The trial court made, I believe, some factual findings in terms of whether or not, he states specifically, there was no evidence of a grade. In discussing what I was my theory, he says, specifically, there was no evidence of a grade. And in the record, there's a page that talks about the fact that the door in the sidewalk is sloped so that anything would drain away from the door so the water wouldn't go into the restaurant, that it would go out into the parking lot. And I think that the trial court maybe didn't catch that. But there is evidence of grade in the record that supports my theory. Second of all, the court made a finding that he thought that the ice was melting anyway based on some of the deposition testimony. And again, that's a factual finding for a fact finder to make, not a motion for summary judgment. And again, I'm entitled to all the inferences that can be reasonably drawn. And based on the deposition testimony of the owner, that it was freezing and even snowing, and the fact that they treated the sidewalk but did not treat the parking lot area near where the sidewalk and the door was, I think that I'm entitled to a reasonable presumption that the ice that had melted on that side went into that area right by the parking lot where the plankton fell. Mr. Stiles, if it was snow out there in the parking lot that she slipped on, are you done? Am I done? If it was snow? If it wasn't ice, if it was just snow. If it was just snow? Yes. I'll concede that. But there's no evidence that she did in fact fall on snow. The testimony was that it was ice. Well, if it was snowing and they treated the sidewalk because of the snow and the parking lot wasn't treated, do you say that it was snow on the sidewalk but not in the parking lot? Well, the sidewalk was clear. And the deposition testimony is pretty clear on that. See, the treatment worked for the sidewalk. Sidewalk was clear. It melted the snow on the sidewalk and went down by the grade, the testimony from the grade, it drained away from the sidewalk and the door. But I think the question was, well, if it snowed on the sidewalk, wouldn't it have snowed in the parking lot too? I would submit that it was. But the deposition testimony, the evidence that we have in the case,  But she didn't see the ice. She didn't see the ice. At least initially, I guess the presumption would be if she had seen the ice, she might have stepped around it. Thank you. Thank you. Ms. Dunsing? Good afternoon. Good afternoon, Your Honors. May it please the Court and Counsel, my name is Maureen Dunsing and I represent the defendant appellee of the skillet. And I am here today to respectfully request that you affirm the trial court finding of summary judgment. The longstanding case law in Illinois that landowners do not generally have a duty to remove natural accumulations of ice. If that duty is voluntarily undertaken, the duty then becomes one of reasonable care. There's obviously a lot of case law about this, and each one turns on its own specific facts. And as counsel spent a great deal of time discussing the facts, I'm going to point out just a few things that I think are problems with his theory of how this accumulation of whatever it was got into the parking lot that day. Plaintiff counsel argues that he's entitled to the assumption that there was snow on the sidewalk, that the salting somehow melted that snow, that this melted snow then flowed its way down into the parking lot due to the grade and refroze. However, there is no evidence whatsoever that there was any snow on the sidewalk on the day of the plaintiff's fall. She did not recall the weather. The defendant representative did not recall the weather at the day of the fall. She fell at about midnight-ish. Furthermore, there's absolutely no evidence whatsoever that there was any snow removal performed on the day of her fall or the days leading up to her fall. She testified that there was nothing consistent with the presence of snow plows. She testified there was no snow on the sidewalk. She testified that she did not recall whether or not there was snow in the parking lot. And so I think that's another problem with their theory of this case. With regards to the weather that the defendant representative testified to, it was vague at best. He testified that when he arrived the next morning, there might have been flurries. He had no recollection, again, of the weather the day prior. And he further testified that the weather could have been somewhere between 32 and 38 degrees. He did not recall. Furthermore, the plaintiff herself, as your honors have pointed out, did not know what she fell on. She testified that she fell on ice, but the follow-up questions, as your honor pointed out, she didn't really know what she fell on. The questions were posed, did you see the ice before you slipped? No, I did not. Did you see the ice after you slipped? I don't remember. Do you know how that ice made you fall? I mean, I don't know. I could have. No, I'm not. Probably could have. What I don't remember was her answer. She has no idea what made her fall. She's completely assuming that she fell on ice because she saw her companion slip in a different area of the parking lot as she testified to. So, again, she doesn't have any testimony that supports that she actually fell on ice. Similarly, as there's no evidence of any snow removals during the day leading up to her fall, there's no way that the defendant could have created or somehow aggravated an unnatural accumulation. Well, that's true of the parking lot, except where she fell, according to the plaintiff's theory. Correct. There's no evidence of snow removal. There's no evidence of snow piled anywhere on the sidewalk. There was no evidence of any snow removal anywhere at the property. By all accounts, it sounds like it was a fairly clear parking lot, a fairly clear sidewalk that happened to have some salt on it. Again, she has no idea what caused her to fall, and there's certainly no evidence that my client somehow created that condition. Well, the no evidence of snow removal goes to a couple of concepts, doesn't it? Well, it could be that there was no snow to remove. Okay. Which is what you said that's a problem with some of the facts. Exactly. There's simply no evidence, which is a big problem for the plaintiff's case here. Furthermore – What's the other concept you said goes to? Or it was effectually cleared, and they managed to get every single speck off of the parking lot and every single speck off of the sidewalk, which seems highly unlikely, but I suppose it is possible. Okay, well, but there's no liability for this restaurant owner in that parking lot on that day. Correct. I mean, because apparently there's been no snow removal efforts in the parking lot. Am I correct? That's correct from the evidence in the record. Well, didn't you say that the state of Illinois law says you don't mess with it, you have no liability? Correct, but if there's nothing to mess with, then there's similarly no liability. Well, I'm just saying, in theory, either it's done in a non-negligent way or it wasn't done at all, and you're free of liability. Yes. But the theory is that there was something on the sidewalk that drained down because you liquefied whatever was on the sidewalk, and once it went down to a colder area with no salt, you know, it froze. The problem with that theory, though, is there's no testimony from any of the witnesses that there was any snow on the sidewalk the evening in question or the day in question that could have somehow melted and gotten into the parking lot. And furthermore, the fact that my client or this Joliet police officer had removed snow on prior occasions, it doesn't create an ongoing duty to continually remove subsequent snow accumulations or ice accumulations. Yeah, when is the appropriate time? When does that expire? I mean, in other words, I'm just saying, okay, this guy shows up when he wants to clean off the walk, to clean off the parking lot. Okay, so he does it at noon, okay? And then there's a snowstorm in the afternoon and doesn't do it the next day. When does natural accumulation occur, and when does the restaurant owner get free of any exposure to negligence? I actually had a similar case that was just affirmed in the second district where that was the testimony, it was an ongoing blizzard, and I represented the snow removal contractor. And the testimony from the plaintiff was that we never came out during a blizzard and never plowed the parking lot where she fell. And it was affirmed that she did slip on a very large amount of ice in the middle of the parking lot, but it was nothing more than a natural accumulation. Again, without any sort of evidence whatsoever to point to even support their theory that this water somehow melted off of snow and got into the parking lot, I think summary judgment was completely appropriate in favor of my client. There is no liability here. There was no duty. There was no breach of duty that can be shown. And as such, we're respectfully requesting that finding a summary judgment be granted. Are there no further questions? Thank you all so much for your time. Mr. Piles, any rebuttal? I would submit that the record does have evidence that it snowed or something the night before. The deposition testimony of the owner was that we don't do anything unless something happens. So it isn't like they're going to go out and shovel and put salt down if there's nothing going on. Testimony from the owner is that when we arrived there in the morning, the sidewalk was salted. If the sidewalk was salted and it was clear and nothing had happened the night before, why did they salt it? How long does salt last on a sidewalk? Well, I would submit that there's nothing in the record that would suggest how long it was. However, I am entitled to the inference, the fact that they did in fact treat the sidewalk that day and that the owner testified that the fact the sidewalk had been treated, I think is evidence, that it had snowed because he did testify that there was flurries and it had been snowing the day before. When did this accident occur? I just want to get the timeline in my mind. I think the early morning hours of February 27th. So when the owner came in the next morning about seven hours later, the sidewalk had been salted and it was clear. This had happened in the early morning hours of February 27th. And when they're talking about the day before, they're talking about the night before. It was freezing, there had been flurries, and they're talking about the weather conditions that had existed the day before, which really wasn't that far from when my client had fallen. He had fallen in the early morning hours of February 27th. Did the salt get put down before your client fell or after? It's not in the record. I can't answer that question. How's the jury going to answer it? Well, the only thing I would say is this, and again, we're at the summary judgment motion stage. I haven't had an opportunity to call the owner as a witness and to go through and prove my entire case. You may be right. However, I only have to present a factual basis that would entitle me to judgment at the summary judgment motion stage. And I would suggest to you that I am entitled to the inference to the fact that they treated the sidewalk area, that it in fact had snowed, and otherwise, why would you have put the salt down? Why would they have treated the sidewalk? You already testified that it did snow the day before. That there were flurries and that it had been freezing the night before. I just want to address one other thing. When you say the night before, I want to get that time frame. The night before, you're talking before midnight. Yes. And she falls after midnight. Correct. In all honesty, we're talking about the same evening. I guess you're talking about the early morning hours. I'm talking about 1 o'clock, 12 o'clock. Early morning hours of the next day. That's correct. And I want to go back to the testimony about what my client said. And she testified about what she did fall and fall on. And she did testify that it was ice. And she was asked to describe, did you see it before? No, did you see it after? She says, I don't remember. But she remembers seeing it when her companion was walking before her. Again, the discovery deposition says, well, I guess I saw it. Because I saw him slip. Did she say she saw the ice? Yes. I'm going to get the exact. I had it here. This is on Common Law Record, page 85. Question. I mean, are you just assuming that you slipped on ice? Answer, no. But you don't remember seeing it at any time. I don't remember seeing ice, no. My friend Will slipped, I guess. So, yeah, I guess you could say I saw it. But it wasn't in the same spot. Question. When you say Will slipped, what did he slip? Answer. Before I did, but he caught himself. He didn't fall all the way. But he was in a different spot than I was. Question. Okay, so he slipped and didn't fall. Answer, correct. Question. It was not in the same spot where you slipped. Answer. It was in, like, the same vicinity, but not the exact same. He was more over, and then there's another question. But we have still missing the words ice. No, she says at the very beginning of all this that she says she slipped on ice. And I apologize. I'll go back to that. The reason I'm saying ice, you say it. It. What, the companion slipping? I don't know what it refers to. C84 of the record. This is on page 20B. Question. Okay, and what was it that caused you to fall? Answer. Ice. I would ask. Well, I understand that she says that she didn't see it before, and she didn't see it after. Well, the hint that she did see regarding her companion, is that to mean ice? Yes. Okay. I mean, in that, you know. I mean, it is a discovery deposition, and I guess if I can, I'm not asking my own client questions. She's being questioned by the very capable Ms. Dunsing. However, you know, my response would be is that she doesn't identify what she fell on. She identified the fact that her friend who was walking before her slipped but did not fall. She identifies the area that it was in a place by the sidewalk and by the front door. And I would submit to you that that provides a factual basis based on the other evidence of the grade, the other evidence that the sidewalk could have been in fact treated but the parking lot was not treated, the fact that the weather conditions that it was freezing and it had been snowing the day before. And I would submit to you that the plaintiff has met its burden in opposing the defendant's motion for summary judgment. I would also look to the fact that the trial court, again, if you read the court's decision, made a lot of factual findings that I think that should have been left to the fact finder in this case, especially in discussing the fact that he made the finding that, well, the snow was probably melting anyway. And that's for a jury or an arbitration panel to decide, not on a motion for summary judgment. To me, that's a genuine issue of fact. Thank you. Questions? Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess until 9 o'clock tomorrow morning. All right. Court is now adjourned.